UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-62008-CIV-COHN/SELTZER

DR. DWAIN A. HAMILTON, M.D.,

    Plaintiff,

v.

SHERIDAN HEALTHCORP, INC., SHERIDAN
HEALTHCARE, INC., DR. JOSEPH LOSKOVE,
M.D., and DR. JEAN MILES, M.D.,

    Defendants.

_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Defendants' Motion for Summary Judgment [DE 59] ("Motion"). The Court has reviewed the Motion, Plaintiff's Opposition [DE 94], and Defendants' Reply [DE 98], and is otherwise advised in the premises.[1] As discussed more fully herein, the Court will grant the Motion and enter summary judgment for Defendants on all claims.

## I.  BACKGROUND

This action arises from race-based discrimination and retaliation Plaintiff Dr. Dwain A. Hamilton, a black man, allegedly suffered at the hands of his employers, Defendants Sheridan Healthcorp, Inc. and Sheridan Healthcare, Inc. (collectively "Sheridan"), and his supervisors, Defendants Dr. Joseph Loskove and Dr. Jean Miles. Sheridan contracts to provide medical services for numerous hospitals, including

---

[1] Plaintiff requests that in deciding the Motion, the Court also take account of materials he has submitted in support of his own motion for summary judgment. See DE 90. Subject to the applicable evidentiary rules, the Court has considered these materials in arriving at its determinations.

Memorial Regional Hospital ("Memorial"). DE 60 ¶¶ 1–3. Sheridan hired Hamilton in July 2007 as an anesthesiologist at Memorial. Id. ¶ 3. Sheridan briefly transferred Hamilton to Westside Regional Medical Center in January 2009, however it granted Hamilton's request to return to Memorial in April 2009. Id. ¶¶ 4–5. Upon Hamilton's return to Memorial, he was placed on the night shift. DE 88 ¶ 68. As the only representative of the anesthesiology department on the night shift, Hamilton was the head of the department during that shift and received a salary of $300,000 per year. Id.

In 2010, however, Sheridan began to receive complaints about Hamilton. Other physicians at Memorial reported that Hamilton arrived late for work and at times performed poorly. DE 60 ¶ 16. In September 2011, a surgeon filed an incident report stating that Hamilton had delayed in providing anesthesia to a patient experiencing pain during labor who required a cesarean section. Id. ¶ 23; DE 65-4 at 6.[2] In March 2012,

---

[2] Hamilton contests numerous portions of Defendants' Statement of Material Facts as based upon inadmissible hearsay. The Court will not consider inadmissible hearsay statements in arriving at its determinations. See generally Hetherington v. Wal-Mart, Inc., 511 F. App'x 909, 910 (11th Cir. 2013) (per curiam) (discussing role of hearsay evidence at summary-judgment stage). Nevertheless, many of Hamilton's objections on the basis of hearsay are meritless. For example, Hamilton argues that evidence of complaints made about him to Defendants is hearsay. See, e.g., DE 88 ¶ 23. This evidence is not hearsay, however, because the complaints are not offered for their truth. Instead, they are relevant for the fact of their communication to establish that Defendants had a non-discriminatory basis for perceiving a need to discipline Hamilton. See Jefferson v. Burger King Corp., 505 F. App'x 830, 836 (11th Cir. 2013) (per curiam), cert. denied, 133 S. Ct. 2352 (2013); Fed. R. Evid. 801(c)(2).

The Court further notes that Hamilton responds to portions of Defendants' Statement of Material Facts merely as "disputed," but does not identify a factual or legal basis to contradict Defendants' assertions. See, e.g., DE 88 ¶ 16. However, "[f]or a factual dispute to be genuine, it must have a real basis in the record, and mere conclusions or unsupported allegations will not defeat a motion for summary judgment." United States v. Romero, No. 13-13600, 2014 U.S. App. LEXIS 6867 at *14–15 n.9 (11th Cir. Apr. 14, 2014) (per curiam) (citing Ellis v. England, 432 F.3d 1321, 1325–26 (11th Cir. 2005)).

another surgeon reported that Hamilton delayed abdominal surgery for a patient with a life-threatening condition by leaving for breakfast after assessing the patient, eventually passing the patient on to another anesthesiologist for treatment. DE 60 ¶ 27. Finally, in April 2012, a third surgeon complained that Hamilton had mismanaged staffing of the anesthesiology department at the beginning of one of his shifts, resulting in a two-hour delay of anesthesia to a post-operative patient in pain. Id. ¶ 28.

Memorial's compliance-related procedures also posed problems for Hamilton. For example, Hamilton was required to obtain board certification within five years of joining Memorial's staff. Id. ¶ 21. Accordingly, in May 2011, Hamilton informed Loskove that he had passed the written portion of his board exam. DE 69-2 at 127:6–18. Hamilton had not passed the written portion of the exam, however, and later admitted that he had lied to protect his reputation. Id. at 129:13–20. Hamilton was warned that further misrepresentations would result in his termination. Id. at 130:4–6. Hamilton also failed to consistently check his work e-mail account, and failed to complete hundreds of patient charts. DE 60 ¶ 25.

As a result of Hamilton's deteriorating performance, Loskove decided to move Hamilton to the day shift, so that his performance could be monitored and improved. Id. ¶ 30. Loskove also decided to relieve Hamilton of his on-call duties, which resulted in a $50,000 pay cut. Id. ¶ 33. Loskove met with Hamilton and human-resources representatives on April 26, 2012, to inform Hamilton of the changes. Id. ¶ 31. During this meeting, Hamilton was presented with a letter detailing his perceived performance issues, and informing him of his shift change and monitoring. See DE 68-5. Loskove explained the decision to Hamilton by stating: "I don't have confidence that you can be

the face of the department at night." DE 88 ¶ 77; see also DE 86 ¶ 9. Hamilton interpreted this statement as a veiled reference to his race. DE 88 ¶ 77. As a result, Hamilton became upset and left the meeting. DE 69-1 at 65:6–67:14. The next day, Hamilton sent a text message to Loskove stating: "If I was Dr. Carmel, I'd still have my job." DE 68-3 at 4. With this message, Hamilton intended to imply that he would be treated more favorably if he were white, as is Dr. Carmel. DE 88 ¶ 78.

Hamilton was informed that his new schedule would take effect on May 7, 2012. DE 60 ¶ 32. Hamilton requested time off from work prior to the start of the new schedule, and Loskove permitted him to take vacation through May 21, 2012. Id. ¶ 34. On May 18, 2012, Hamilton requested Family and Medical Leave Act ("FMLA") leave through June 21, 2012, which Sheridan approved. Id. ¶ 37. On June 19, 2012, Hamilton's wife informed Sheridan that Hamilton could not return to work until June 25, 2012. Id. ¶ 41. On June 25, Hamilton did not return to work, and instead requested additional leave. Id. ¶ 42. Hamilton indicated that he intended to return to work on July 2, 2012, and that he would also provide Sheridan with a release from his doctor indicating his fitness to return to work by that time. DE 88 ¶ 81; DE 74-3. Hamilton did not report for work on July 2 or 3, however, nor did he advise the anesthesiology department as to his whereabouts on either of those days. DE 60 ¶ 44. Because Hamilton failed to return to work, Sheridan terminated his employment on July 3, 2012. Id. ¶ 45; DE 88 ¶¶ 87–91.

Hamilton commenced this action on September 13, 2013. DE 1. Hamilton alleges that Defendants discriminated against him on the basis of race when they removed him from Memorial's night shift, subjected him to monitoring, cut his pay, and ultimately

4

terminated his employment. DE 9 ¶¶ 30–38. Hamilton also alleges that Defendants retaliated against him by firing him after he complained of discrimination. Id. ¶¶ 52–58. Hamilton therefore brings discrimination and retaliation claims against all Defendants under 42 U.S.C. § 1981, and discrimination and retaliation claims against Sheridan under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, et seq., and the Florida Civil Rights Act ("FCRA"), Fla. Stat. § 760.01, et seq. In the Motion now before the Court, Defendants seek summary judgment on all of Hamilton's claims.

## II.  LEGAL STANDARD

A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that "there is an absence of evidence to support the nonmoving party's case." Id. at 325.

After the movant has met its burden under Rule 56(a), the burden of production shifts, and the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). As Rule 56 explains, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3). Therefore, the non-moving party "may not rest upon the

5

mere allegations or denials in its pleadings" but instead must present "specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576–77 (11th Cir. 1990). In deciding a summary-judgment motion, the Court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. Davis v. Williams, 451 F.3d 759, 763 (11th Cir. 2006).

### III. DISCUSSION

Defendants have moved for summary judgment on Hamilton's race discrimination and retaliation claims.[3] The Court agrees with Defendants that Hamilton has failed to offer sufficient proof on dispositive elements of each of his claims. With regard to his discrimination claims, Hamilton has not shown the existence of similarly situated individuals who received favorable treatment. As to his retaliation claims, Hamilton has not shown that Sheridan's proffered legitimate, non-retaliatory reason for his termination—a failure to report for work—was pretextual. The Court therefore will grant summary judgment for Defendants.

#### A. Hamilton Has Not Established a Prima Facie Case of Race Discrimination

A plaintiff alleging discrimination may prove his claim through direct or circumstantial evidence. The showing necessary to support the claim depends upon the sort of evidence used. A plaintiff's direct evidence of discrimination provides a simple and quick route to proving a claim for discrimination. See Maynard v. Bd. of Regents,

---

[3] The standards for discrimination and retaliation claims under each of the relevant statutory regimes—42 U.S.C. § 1981, Title VII, and the FCRA—are the same. See, e.g., Giles v. Daytona State College, Inc., 542 F. App'x 869, 872 (11th Cir. 2013) (per curiam); Gray v. City of Jacksonville, 492 F. App'x 1, 3 (11th Cir. 2012) (per curiam), cert. denied, 134 S. Ct. 84 (2013); Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1325 n.14 (11th Cir. 2011); Wilson v. Farley, 203 F. App'x 239, 247 (11th Cir. 2006) (per curiam). Accordingly, the Court will analyze the discrimination claims together, and will analyze the retaliation claims together.

6

342 F.3d 1281, 1289 (11th Cir. 2003). Where a plaintiff offers circumstantial evidence, however, the Court must proceed through the more involved burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Maynard, 342 F.3d at 1289. Accordingly, the Court must determine as a threshold matter whether Hamilton's proffered evidence of discrimination is direct or circumstantial.

"Direct evidence is 'evidence, that, if believed, proves the existence of a fact without inference or presumption.'" Wilson v. B/E Aero, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004). In line with this definition, statements unambiguously showing a causal link between an adverse employment action and a plaintiff's protected characteristics are direct evidence of discrimination. Wright v. Southland Corp., 187 F.3d 1287, 1306 (11th Cir. 1999). However, "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor," are sufficiently clear to constitute direct evidence. Rojas v. Florida, 285 F.3d 1339, 1342 n.2 (11th Cir. 2002) (per curiam) (citations and internal quotation marks omitted). On the other hand, if a statement merely suggests a discriminatory motive, "it is by definition only circumstantial evidence." Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999).

Hamilton offers two statements that he contends are direct evidence of racial discrimination. DE 94 at 8. First, Miles allegedly remarked in 2009 or 2010 that the "Obamas [were] coming in" when referring to the shifts of Hamilton and his paired certified registered nurse anesthetist ("CRNA"), a black woman. DE 75-1 at 77:5–78:8.[4]

---

[4] The only evidence of this statement appears to be inadmissible hearsay. See DE 75-1 at 77:5–78:8 ("A: . . . [Miles] said, 'The Obamas are coming in.' . . . Q: You were present then? A: No. Somebody said that she said, 'The Obamas are coming in.'"). Nevertheless, the Court takes note of Miles's alleged statement because it is central to Hamilton's allegations.

7

Second, Loskove told Hamilton during the April 26, 2012, meeting at which Hamilton was removed from the night shift: "I don't have confidence that you can be the face of the department at night." DE 88 ¶ 77.

However, neither statement unequivocally illustrates, without the aid of inferences or presumptions, that adverse employment actions against Hamilton were the result of racial animus. Miles's alleged comparison of Hamilton and the CRNA to the Obamas is not direct evidence of discrimination because it lacks any obvious causal connection to adverse employment action against Hamilton. See Wright, 187 F.3d at 1306. Likewise, Loskove's remark that Hamilton should not be the face of the anesthesiology department is susceptible to multiple interpretations. Loskove may have been referring to the numerous complaints Sheridan had received about Hamilton's performance and responsiveness, and his conclusion that Hamilton's job-related issues rendered him an inappropriate representative of the anesthesiology department during the night shift. Loskove's remark—which may suggest a discriminatory motive, but is not so blatant as to rule out non-discriminatory alternatives—therefore is also not direct evidence of discrimination. See Rojas, 285 F.3d at 1342 n.2; accord Jones v. Heritage Props., Inc., No. 05-162, 2007 U.S. Dist. LEXIS 4610 at *16–17 (N.D. Miss. Jan. 22, 2007) (comment that black employee should not "be the first face a person sees upon coming through the door" was too ambiguous to prove discrimination directly).

Having determined that Hamilton proceeds on circumstantial evidence, the Court must apply the McDonnell Douglas burden-shifting analysis. To make out a prima facie case of employment discrimination within this framework, a plaintiff must generally show that: "(1) he belongs to a racial minority; (2) he was subjected to adverse job action; (3)

8

his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do the job." Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997) (per curiam). If a plaintiff shows he has a prima facie case, the burden shifts to the defendant to offer a non-discriminatory justification for the adverse action. If the defendant offers a non-discriminatory justification, the plaintiff must then show the justification to be pretextual. Wilson, 376 F.3d at 1089–90. Here, the Court's analysis of Hamilton's discrimination claims under the McDonnell Douglas analysis begins and ends with the first step.

     Hamilton has not made out a prima facie case of discrimination because he has not shown the existence of similarly situated employees who received favorable treatment. A plaintiff attempting to establish a prima facie case of discrimination must generally show that similarly situated non-black employees received preferential treatment. Woods v. Cent. Fellowship Christian Acad., 545 F. App'x 939, 945 (11th Cir. 2013) (per curiam). These similarly situated individuals, sometimes referred to as "comparators," must be similarly situated in "all relevant respects." Knight v. Baptist Hosp. of Miami, Inc., 330 F.3d 1313, 1316 (11th Cir. 2003) (per curiam) (internal quotation marks omitted). This requirement poses a substantial hurdle for a plaintiff with a record of job-related performance issues, because the plaintiff must identify comparators with records of similar problems at least as severe as his own. Embry v. Callahan Eye Found. Hosp., 147 F. App'x 819, 829–30 (11th Cir. 2005) (per curiam); Knight, 330 F.3d at 1316–17.

     In this case, Hamilton has not made out a prima facie case because he has failed to provide any evidence of comparators with similar histories of disciplinary and job-

performance issues. Sheridan received multiple complaints about Hamilton's performance and habitual tardiness. DE 60 ¶ 16. Some of these complaints reflected significant and noteworthy incidents, such as Hamilton's alleged delay in providing anesthesia to a patient in labor who required a cesarean section (id. ¶ 23), Hamilton's decision to go for breakfast instead of promptly providing anesthesia to a patient with a life-threatening condition and in need of abdominal surgery (id. ¶ 27), and his mismanagement of staffing which resulted in a two-hour delay of anesthesia to a post-operative patient in pain (id. ¶ 28). Hamilton also lied to Loskove about passing the written portion of his board exam. DE 69-2 at 127:6–129:20. Hamilton failed to check his work e-mail account and to complete hundreds of patient charts. DE 60 ¶ 25. Finally, immediately prior to his termination, Hamilton failed to report for work without notice. DE 60 ¶¶ 42, 44–45.

Hamilton cannot point to any potential comparator with a similar disciplinary record. Hamilton proposes Sheridan's white anesthesiologists at Memorial as his comparators. DE 94 at 6; see also DE 72-1 ¶ 4. These individuals, however, were not the subject of complaints similar to those about Hamilton, particularly with respect to the handful of patient-care incidents that stand out from Hamilton's record. DE 60 ¶ 51. None of these individuals misrepresented their credentials to Loskove. Id. ¶ 54. None of these individuals had a similar record of frequent tardiness. Id. ¶ 55. None of these individuals failed to complete hundreds of patient charts. Id. ¶ 52. Nor does Hamilton point to any anesthesiologist who failed to report for work without notice. In short, Hamilton cannot identify an appropriate comparator, because each of his proposed

10

comparators lacks a work history similar to or as problematic as his own. See Embry, 147 F. App'x at 829–30.[5]

Absent direct evidence of discrimination, Hamilton must prove his case under the McDonnell Douglas burden-shifting framework. Hamilton, however, has failed to identify any similarly situated comparators, particularly with respect to their disciplinary histories. Without these comparators, Hamilton cannot make out a prima facie case of discrimination, and his discrimination claims fail as a matter of law. Accordingly, the Court will grant summary judgment in Defendants' favor on those claims. See Knight, 330 F.3d at 1315–19 (affirming grant of summary judgment on race discrimination claim where plaintiff failed to show comparators with similar disciplinary history).

---

[5] A plaintiff may, in certain cases, survive summary judgment in the absence of a sufficient comparator if he "presents a convincing mosaic of circumstantial evidence that would allow a reasonable jury to infer intentional discrimination by the decisionmaker" other than the preferential treatment of other individuals. Peters v. HealthSouth of Dothan, Inc., 542 F. App'x 782, 786 (11th Cir. 2013). Aside from Loskove's equivocal remark that he was uncomfortable with Hamilton being the face of the anesthesiology department, however, Hamilton has provided little admissible evidence going to Defendants' motives. As discussed more fully with regard to Hamilton's retaliation claims, the "inconsistencies" he perceives in the justifications for his eventual termination are manufactured and do not give rise to an inference of discriminatory intent. Therefore, Hamilton has not presented the "convincing mosaic of circumstantial evidence" that would allow him to establish a prima facie case in the absence of a comparator. See Carter v. Demings, No. 11-1640, 2013 U.S. Dist. LEXIS 134900 at *25–29 (M.D. Fla. Sept. 20, 2013) (granting summary judgment for defendant and discussing quantum of evidence required to show "convincing mosaic of circumstantial evidence"); St. George v. Advance Stores Co., No. 10-60036, 2011 U.S. Dist. LEXIS 140237 at *22–26 (S.D. Fla. Dec. 6, 2011) (same). Moreover, Hamilton himself proceeds largely on the theory that he was treated less favorably than Sheridan's white anesthesiologists. See DE 94 at 8, 10. The Court thus finds that the issue of appropriate comparators is dispositive of whether Hamilton can make out a prima facie case.

### B. Hamilton's Retaliation Claims Fail Because He Cannot Show that Sheridan's Justification for His Termination Was Pretextual

The McDonnell Douglas burden-shifting analysis also applies to retaliation claims supported only by circumstantial evidence. Dockens v. Dekalb Cnty. Sch. Sys., 441 F. App'x 704, 708 (11th Cir. 2011) (per curiam). To establish a prima facie case of retaliation, a plaintiff must show that: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. Pennington v. City of Huntsville, 261 F.3d 1262, 1266 (11th Cir. 2001). Once the plaintiff has established a prima facie case, the defendant may respond with evidence that legitimate, non-retaliatory reasons supported the adverse employment action. Id. The burden then shifts back to the plaintiff to show that the defendant's reasons were pretextual. Id. Here, Hamilton's retaliation claims ultimately fail because he has not shown that Sheridan's proffered explanation for his termination—job abandonment—was a pretext for retaliation.

Hamilton alleges that he engaged in protected activity when he complained of race discrimination after the April 26, 2012, meeting at which he was disciplined by Loskove, by telling Loskove: "If I was Dr. Carmel, I'd still have my job." DE 68-3 at 4; DE 94 at 13. Carmel is a white Sheridan anesthesiologist. DE 60 ¶ 50. Hamilton subsequently took FMLA leave for much of May and June 2012. On July 2, 2012, however, Hamilton failed to return to work on the date he had agreed upon with Sheridan's human resources personnel, and Sheridan terminated his employment on the afternoon of July 3. DE 88 ¶ 87. Assuming without deciding that these facts are

12

sufficient to establish a prima facie case of retaliation, the burden then shifts to Defendants to articulate a legitimate, non-retaliatory basis for Hamilton's termination.

Defendants contend that Hamilton was terminated not for retaliatory reasons, but because he failed to return to work when he indicated he would. Sheridan and Hamilton anticipated that Hamilton would return from leave on July 2, 2012. DE 60 ¶ 42; DE 88 ¶ 81. Hamilton, however, did not come to work at Memorial on July 2 or 3, and did not communicate with the anesthesiology department regarding his whereabouts. DE 60 ¶¶ 44–45. Sheridan thus terminated Hamilton on July 3 for abandoning his job. Id.; DE 88 ¶¶ 87–91. As abandonment is a legitimate, non-discriminatory reason for discharge, see Fulwood v. Capital One Auto Fin., Inc., No. 09-378, 2011 U.S. Dist. LEXIS 29395 at *10–11 (M.D. Fla. Mar. 22, 2011), the burden returns to Hamilton to show that the reason was pretextual. See Pennington, 261 F.3d at 1266.

A plaintiff may establish pretext by showing that an employer more likely acted with an improper motive or that its proffered explanation is not credible. Kragor v. Takeda Pharms. Am., Inc., 702 F.3d 1304, 1308 (11th Cir. 2012). The plaintiff must produce evidence that "reveal[s] such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Vessels v. Atlanta Indep. Sch. Sys., 408 F.3d 763, 771 (11th Cir. 2005) (per curiam) (internal quotation marks omitted). The plaintiff must show both that the reason offered by the employer was false, and that retaliation was the real purpose of the actions. Reeve v. Sec'y, DHS, 542 F. App'x 779, 781 n.2 (11th Cir. 2013) (per curiam). Conclusory allegations are insufficient, and the plaintiff must present "concrete evidence in the form

13

of specific facts" showing that the employer failed to give an honest explanation for its behavior. Dent v. Ga. Power Co., 522 F. App'x 560, 562 (11th Cir. 2013) (per curiam) (internal quotation marks omitted)

Hamilton attempts to show pretext by arguing that Sheridan did not follow its ordinary procedures when it terminated him. Hamilton asserts that Sheridan's usual practice is to issue written physician work schedules in advance, to notify physicians of changes to the schedule, and to contact physicians who do not appear for work as scheduled. DE 88 ¶ 85. Hamilton contends that Sheridan failed to follow these procedures when it terminated him without putting him on a written work schedule in advance of July 2, 2012, and without calling him when he did not arrive for work on that day. DE 94 at 17. Hamilton offers these irregularities to demonstrate that Sheridan's proffered reason for his termination is unworthy of belief. Id. at 15–17. The Court agrees with Hamilton that "an employer's deviation from its own standard procedures may serve as evidence of pretext." Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d 1286, 1298–99 (11th Cir. 2006). Nevertheless, upon closer examination, the evidence does not support Hamilton's contention that Sheridan significantly deviated from its standard procedures in the time leading up to his termination.

The evidence shows that Sheridan's personnel prepare written work schedules for Memorial's anesthesiology department well in advance, and that physicians who do not appear for work as scheduled are typically contacted by telephone. DE 88 ¶ 85; see also DE 68-7 at 100:10–104:10, 124:16–125:23. However, physician work schedules are frequently rearranged as a result of conflicts and changes in circumstances. DE 86 ¶¶ 28–29; see also DE 97 ¶¶ 28–29. Loskove therefore reviews the departmental

14

schedule on Sunday of each week, and communicates any changes to the physician responsible for assigning anesthesiologists to operating rooms that day. DE 87-1 ¶ 5.

In late June 2012, Hamilton and Sheridan's human resources personnel had agreed that Hamilton would return to work on July 2, 2012. DE 88 ¶ 81; see also DE 74-3. Loskove thus contacted the physician responsible for assigning anesthesiologists on Sunday, July 1, 2012, and instructed him to add Hamilton to the schedule for Monday, July 2. DE 87-1 ¶ 6; see also DE 68-7 at 99:13–101:22. Hamilton did not report for work on July 2, however, nor did he communicate his whereabouts to the anesthesiology department. DE 60 ¶ 44. Though the parties agree that no Sheridan personnel spoke with Hamilton on July 2 (e.g., DE 88 ¶ 86), Loskove testified that he believed that the department's secretaries had attempted to contact Hamilton when Hamilton failed to report for work. DE 68-7 at 125:10–126:15.[6]

The "pretext inquiry centers upon the employer's beliefs," and an employer with a good-faith impression of the facts surrounding an adverse employment decision will not be found to have acted with retaliatory animus if that belief later proves to be mistaken. Hudson v. Blue Cross Blue Shield of Ala., 431 F. App'x 868, 869–70 (11th Cir. 2011) (per curiam). Therefore, the relevant inquiry is whether Loskove, as the alleged decision-maker responsible for Hamilton's termination (DE 88 ¶ 96; DE 94 at 4), believed that he and his staff had adhered to their ordinary procedures. Hamilton does not offer any evidence to contradict Loskove's testimony that Hamilton was added to the July 2 schedule according to the usual method of revising the schedule, or that Loskove understood that the anesthesiology secretaries had tried to reach Hamilton by

---

[6] Neither party has directed the Court to competent evidence regarding whether the secretaries actually attempted to contact Hamilton.

15

telephone. Accordingly, Hamilton does not show any knowing deviation from normal procedures, and instead reveals at most administrative confusion or miscommunication, which is insufficient to support a showing of pretext. See Lane v. G.A.F. Material Corp., No. 11-2851, 2013 U.S. Dist. LEXIS 41374 at *18–20 (M.D. Fla. Mar. 25, 2013) (finding alleged employer error inadequate to support showing of pretext on summary judgment, and citing Chapman v. AI Transp., 229 F.3d 1012, 1030 (11th Cir. 2000)).

Hamilton also characterizes Sheridan's justifications for terminating him as inconsistent and "shifting." DE 94 at 9. A review of the evidence, however, contradicts Hamilton's assertions. Defendants have variously stated that Hamilton was terminated "for cause," for "job abandonment," or because "he was due to return to work and never returned." Id. These explanations, though differently phrased, do not conflict because they each convey that Hamilton was terminated for failing to appear at work as required. Consistent with these explanations, Sheridan's employee handbook states that failure to report for work on the first business day following the last day of authorized leave, or otherwise communicate with Sheridan regarding the absence, is grounds for termination. DE 65-3 ¶ 8 & ex. 3. Defendants' explanations for Hamilton's termination therefore are internally consistent and appear to conform to Sheridan's standing policies.

The Court further rejects Hamilton's implication that a handful of collateral facts bolster his showing of pretext. For example, Hamilton repeatedly invokes his FMLA leave as somehow casting his termination in a suspicious light. See DE 94 at 17. However, having conceded that he and Sheridan anticipated he would return on July 2, 2012 (e.g., DE 94 at 14), Hamilton directs the Court to no authority for the proposition

16

that his termination for failure to report for work on that date somehow runs afoul of the FMLA. Cf. Herring v. Disetronic Med. Sys., No. 08-1013, 2010 U.S. Dist. LEXIS 54365 at *16–17 (S.D. Ind. June 1, 2010) (holding that termination of employee for failure to return to work as she had represented she would did not violate FMLA). Nor does Hamilton explain how his failure to provide Sheridan with a release to return to work signed by his doctor (see DE 88 ¶ 81; DE 94 at 1) excuses his absence or renders his termination suspect. Finally, the Court does not view Sheridan's apparent offer to reinstate Hamilton (see DE 94 at 16) as probative of whether his termination for job abandonment was pretextual.

Because Defendants have offered a legitimate, non-retaliatory reason for Hamilton's termination, Hamilton bears the burden of showing that the reason was pretextual. Hamilton, however, has failed to offer sufficient evidence of implausibilities, inconsistencies, or other weaknesses in Defendants' explanation to support a finding that it was false. Instead, the record reflects that Defendants made a colorable attempt to comply with their ordinary procedures throughout the events surrounding Hamilton's termination. As Hamilton cannot rebut Defendants' contention that he was terminated for failing to appear at work on July 2, 2012, he has failed to satisfy his burden of showing pretext, and Defendants are entitled to summary judgment on Hamilton's retaliation claims.

## IV.  CONCLUSION

Hamilton's claims of discrimination and retaliation each suffer fatal flaws. Hamilton has failed to support his discrimination claims with evidence of favorably treated comparators who do not share his protected characteristics. Hamilton has also failed to provide sufficient evidence to allow a factfinder to determine that Sheridan's

reasons for terminating him were a pretext for retaliation. Defendants thus are entitled to summary judgment on each of Hamilton's claims against them. It is thereupon

**ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment [DE 59] is **GRANTED**. The Court will enter a separate Final Judgment consistent with this ruling.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 25th day of May, 2014.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF